## PRICE–HOLLISTER CO. v. WARFORD CORPORATION.

(District Court, S. D. New York. December 1, 1926.)

1. Trade-marks and trade-names and unfair competition ⚖=68—Threatening infringement suits against competitors' customers for purpose of injuring its business is "unfair competition."

A patentee has a right to protect his interest by notifying the world, or any person, in particular, of his rights under his patent, and cautioning against infringement; but he cannot, under this guise, harass and annoy competitors or seek to destroy their trade.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Unfair Competition.]

2. Trade-marks and trade-names and unfair competition ⚖=68—Sending misleading letters to customers of competitor held "unfair competition."

Form letters and circulars sent out by defendant to complainant's customers, in which misuse was made of a default decree for infringement of a patent, obtained by defendant against a customer of complainant, and containing threats of suit, whereas no suit involving the validity or infringement of the patent had ever been tried, held unfair competition.

3. Trade-marks and trade-names and unfair competition ⚖=95(1)—Equity may grant injunction against unfair competition.

A court of equity has power to grant preliminary injunction against unfair competition tending to destroy complainant's business.

In Equity. Suit by the Price-Hollister Company against the Warford Corporation. On motion for preliminary injunction. Granted.

Gifford & Scull, of New York City (Ira J. Wilson, of Chicago, Ill., of counsel), for plaintiff.

Daniel L. Morris, of New York City, for defendant.

WINSLOW, District Judge. This is an action in equity against the defendant for injunction and for an accounting for damages to plaintiff's business, resulting from threatening letters to defendant's customers, and advertisements and statements to the trade by the defendant and its agents. These statements and advertisements are addressed generally to the trade, or specifically to distributors or customers, and relate to auxiliary transmissions for automobiles, which plaintiff manufactures and markets in large quantities. These transmissions consist of three types, said to be mechanically different, which are generally designated, respectively, as "Giant," "Two-Speed," and "Planator."

The defendant, the Warford Corporation, also sells auxiliary transmissions, and is the licensee under a patent No. 1,010,273, which patent was issued in or about 1911. The Warford Corporation became a licensee under that patent in or about February, 1925. No suit has ever been brought against the plaintiff, Price-Hollister Company, for infringement of this patent, until at or about the time of the submission of this motion, but the defendant did sue one of Price-Hollister Company's customers. Application by the plaintiff herein to intervene in that suit was successfully resisted by the Warford Corporation.

In the Northern district of Ohio, the Warford Corporation sued one Reardon, a purchaser of plaintiff's device, and obtained an uncontested decree in that district. The defendant herein, by form letters and circulars, notified the trade of the decree of the District Court of the Northern District of Ohio, but did not say, in such circulars, that it was a default decree. The originals of some 15 of said letters, notifying the trade of the decree in the Reardon Case, are attached to the moving papers. These letters contain, among other things, the following:

"The sale or offering for sale by you of transmissions manufactured by the Price-Hollister Company, for whom you are a distributor, constitutes an infringement of said law patent, and we hereby notify you to cease such infringement immediately, and to give us your assurance that you have done so, failing in which we will avail ourselves of the remedies which the law affords."

It is alleged in the moving papers that thousands of such notices were sent to plaintiff's jobbers, distributors, dealers, customers, and prospective customers, and the trade generally. Quantities of letters have also been sent out, addressed to plaintiff's trade, containing threats of lawsuits. The effect of this campaign of threats and intimidation by the defendant, begun in or about July, 1926, has decreased plaintiff's business over 60 per cent.

The moving papers are overwhelmingly convincing that the circularization of the trade by this defendant will, in all probability, completely destroy plaintiff's business unless restrained, although the patent, of which the defendant herein is the licensee, has not yet been adjudicated, so far as the plaintiff herein is concerned.

[1] The patentee has a right to protect his interest under the patent by notifying the world, or any person in particular, of his rights under his patent and cautioning against infringement; but he cannot, under this guise, harass and annoy competitors, or seek to destroy their trade. The law provides an orderly method of protecting the monopoly by suit.

The two questions presented on this motion are whether the court has power, in an action of this sort, to grant an injunction pendente lite; and, secondly, whether, if the court have that power, the facts are sufficient to justify the court in exercising its discretion.

[2] I am satisfied that the default decree, obtained by the defendant corporation in Ohio, was misused, and that a false impression was conveyed to the trade as to the effect of such decree. I am also satisfied that the circulars sent out by defendant to the trade are intended to and do impress plaintiff's customers and the trade generally that defendant's patent has been adjudicated in a contested case, and also that all types of plaintiff's transmissions have been held to infringe said patent.

[3] In the case of Asbestos Shingle, Slate & Sheathing Co. v. Johns-Manville Co. (C. C.) 189 F. 611, Judge Hand refers to the misuse of a decree of the court, even though no bad faith be shown in such misuse. I cannot believe that this court is without power to restrain the defendant from going beyond the proper limits of its rights, and to prevent defendant from frightening away plaintiff's cus-

tomers by threats or intimidation. It would be preposterous in this case, if there be no adequate remedy which a court of equity can afford. The great number of exhibits attached to the moving papers are convincing that dealers are refraining from buying from the plaintiff, or from dealing in any of the things manufactured by it, by reason of the alleged adjudication of infringement of defendant's patent. No merchant willingly buys a lawsuit, and it is doubtful if the profits of a highly competitive business would lure him into litigation, which not only would be embarrassing, but might ultimately compel him to respond in damages in excess of his profits. If the letters and circulars of the defendant are issued and distributed, not merely in good faith, to warn against infringement, but rather for the purpose of destroying the business of plaintiff in advance of adjudication, his property rights are wrongfully assailed, and a court of equity should not be slow to afford relief. See Farquhar Co. v. National Harrow Co. (C. C. A.) 102 F. 714, 49 L. R. A. 755; Adriance, Platt & Co. v. National Harrow Co. (C. C. A.) 121 F. 827.

The record fully justifies the conclusion that the defendant has been guilty of acts of grossly unfair competition, and that, unless relief is granted pendente lite in this action, it may be too late to repair the damage otherwise done. The defendant may establish his right to a monopoly, not by threats or intimidation, but by a decree of the United States court by due and orderly procedure. Notices to the trade in advance of such adjudication should not be in the form of threats calculated to terrorize a competitor's customers.

Motion for injunction will be granted, pending the trial of this case, restraining defendant from sending out letters or circulars respecting suits filed, or prospective suits to be filed, by this defendant, charging infringement of its patents by plaintiff's transmissions, except that defendant may furnish copies of any pleadings filed or order entered in any suit actually filed, and from making or publishing threats to file suits against defendant's customers, or prospective customers, claiming infringement of patent No. 1,-010,273 because of the sale or use of plaintiff's transmissions. The order to be entered shall make provision for the sending of a copy of this restraining order to various persons in the trade who may be affected thereby.

As a condition for the issuance of the injunction pendente lite, plaintiff will be required to give a bond in the usual form in the sum of $5,000. Settle order on notice.